665 So.2d 348 (1995)
Anthony Scott GRANTHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2180.
District Court of Appeal of Florida, First District.
December 28, 1995.
*349 Nancy A. Daniels, Public Defender; Chet Kaufman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Amelia L. Beisner, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of the trial court's denial of his request, made prior to the imposition of sentence, that he be permitted to withdraw his previously entered no contest pleas. We conclude that it was an abuse of discretion not to permit appellant to withdraw his pleas. Accordingly, we reverse.
Appellant was charged, in seven separate cases, with one count of burglary of a dwelling while armed, six counts of burglary of a dwelling, one count of possession of a firearm by a convicted felon, six counts of grand theft, one count of grand theft of a firearm, one count of felony petit theft and five counts of misdemeanor criminal mischief. Appellant entered not guilty pleas to all charges. After a jury had been selected to try the first case, appellant's counsel informed the trial court, in appellant's absence, that appellant "wanted to plea [sic] to everything ... and be sentenced." However, according to counsel, he had advised appellant that he could not be sentenced at that time, because the state was seeking habitual felony offender treatment and, therefore, a presentence investigation would have to be conducted. Defense counsel then represented, still in appellant's absence, that "the State ha[d] made an offer to me knowing the Court has discretion on this sentence anyway, but that he be sentenced or enter a plea today on [the first case only], presentence investigation be ordered and then there might be another disposition as to the other charges afterwards."
When appellant was finally brought to the courtroom, his counsel said that appellant "want[ed] to talk to his fiancee before he ma[de] a decision" because "[t]here's [sic] disagreements here as to where he wants to go in this case." Counsel again told the trial court that appellant "wanted to plead to all cases ... and wanted to waive a PSI and go forward," but that he had advised appellant that "that [was] definitely not in his best interest." After appellant had spoken with his fiancee, his counsel told the trial court, in his presence, that appellant wished to enter no contest pleas to the charges made in the first case. A written plea agreement was tendered, which had the numbers of all of the cases pending against appellant listed, although all but one had been crossed out. (Many other portions of the agreement had also been crossed out.) Appellant's counsel stated that the "sentence [was] discretionary with the Court," and that he "ha[d] advised [his] client this exposes him to the potential of 30 years as a habitual felony offender." The record then reflects the following:
THE COURT: ... He's pleading straight up and taking his chances. I think that [sic] he's pleading to is the burglary of a dwelling. It's not while armed. And he's pleading to second count grand theft, and he's pleading to a third count of grand theft of a firearm, and he's *350 pleading to a fourth count, which has been severed out... . But ... for purposes of his plea, he's pleading to possession of a firearm by a convicted felon, and there would be an adjudication of guilt. The state would be requesting that he would be ... sentenc[ed] as a habitual felony offender, which means we're going to have to get a PSI, and then set it back for our next docket day and see if he qualifies as habitual. If he does qualify as a habitual, he could be sentenced as a habitual and he might not be sentenced as a habitual, but, you know, I don't want to mislead anybody. More than likely, you know, he probably would if he qualifies, and under this particular plea the most he could be sentenced to would be 30 years, where if he went to trial and was found guilty as charged, he could be sentenced up to life. That's my understanding.
... .
THE COURT: What about you, Mr. Grantham; is that your understanding of what you will be pleading to, burglary of a dwelling, that's not while armed, and Count[] II, grand theft, and Count III, grand theft of a firearm, and Count IV, possession of a firearm by a convicted felon? And we'll be getting a PSI for the State to file, if they haven't already filed their petition to habitualize you. And you could be  if you were habitualized, you could be sentenced up to 30 years as a habitual felony offender. Is that your understanding of what you were pleading to as well as the possibility of a sentence?
THE DEFENDANT: Yes, sir.
THE COURT: Is that what you want to do?
THE DEFENDANT: Yes, sir.
There was no further colloquy between the trial court and appellant, and it does not appear that appellant was ever placed under oath. The trial court then adjudged appellant guilty, directed that a presentence investigation be performed and scheduled the matter for sentencing in six weeks.
Approximately three weeks later, appellant, in proper person, filed a "Motion to Withdraw Plea Offer or Negotiation," requesting that he be permitted to withdraw his pleas pursuant to Florida Rules of Criminal Procedure 3.170 and 3.172. The motion bore the numbers for all seven of appellant's cases. As grounds, it recited that appellant had been "coerced" into entering the pleas by "extreme pressures," "threats" and "intimidation." In particular, it alleged that both the prosecutor and his counsel had told him that the prosecutor "`would recommend that [he] receive Life plus 180 years'" if he did not accept the offer; and that his counsel had said that he would "resign" if he did not accept the offer. According to appellant, he felt that, under the circumstances, he had no alternative but to accept the offer and enter the pleas. The trial court summarily denied this motion (later explaining that it had done so because appellant did not have "the authority" to file motions while represented by counsel).
Shortly after appellant's pro se motion had been denied, his counsel filed a similar motion. That motion, likewise, bore all seven case numbers, reciting that appellant had entered no contest pleas "in the above-styled causes in their entirety." It recited also that appellant claimed "that he was `railroaded' and `coerced' into entering [his] plea," and that he "ha[d] indicated to counsel that he did not understand the consequences of the plea and did not knowingly or voluntarily enter his plea." It requested that appellant be allowed "to withdraw his earlier tendered pleas of nolo contendere in the above-styled causes and proceed to trial." It was accompanied by another motion, by which appellant's counsel sought leave to withdraw. The latter motion represented, among other things, that
[d]efense counsel has advised [appellant] that it is his legal opinion that the plea bargain offer forwarded by the State and agreed upon by defense counsel and the Court is absolutely in his best interest, but [appellant] as well as his father [who had initially retained counsel] continue to feel that defense counsel has coerced [appellant] into this plea and that defense counsel is "railroading" [appellant] and not working in his best interest.
A few days later, appellant appeared for the previously scheduled sentencing hearing. *351 Initially, appellant's counsel pointed out that "there [was] some confusion" about the status of the cases because the presentence investigation report recited that appellant had entered pleas in all of his cases, whereas he had actually entered pleas in only one. Counsel then informed the trial court that he had filed a motion on appellant's behalf seeking leave to withdraw the pleas. Counsel explained:
Mr. Grantham was very upset on that particular day and felt like, his words were, he was railroaded into a plea and didn't know what he was doing and didn't understand the consequences of the plea... . He indicated he didn't understand what he was doing; that I rushed him into the plea. He didn't want to enter the plea at that time and he did it out of confusion, not knowing the consequences of his plea.
When afforded an opportunity to speak, appellant said that, at the previous hearing, he "was under stress and ... wasn't in [his] right mind. [He] was maxed out." He explained that he had understood that all counts in all cases were to have been resolved by the plea agreement. He also explained that he had a serious drug problem. Finally, he explained that "the State said they were going to push for the 180 years, and I didn't know what to do." The trial court denied the motion to withdraw the plea, stating that it had previously gone "through a whole dialogue" with appellant, and that appellant had responded that he understood everything that was taking place. Appellant was then sentenced, as an habitual felony offender, to thirty years for burglary of a dwelling, and to ten years each for grand theft, grand theft of a firearm and possession of a firearm by a convicted felon, all sentences to run concurrently.
The prosecutor then announced that a second plea agreement had been offered to defense counsel, after appellant had entered the first pleas. According to the terms of that offer, in return for no contest pleas to all remaining charges in all cases, appellant would be adjudicated guilty of all charges and receive concurrent habitual felony offender sentences. After additional discussion, appellant concluded that, since his motion to withdraw his first pleas had been denied and he had already been sentenced to thirty years in prison as an habitual felony offender, it would be foolhardy for him not to accept the state's proposal. However, he insisted that these pleas be conditioned on his being permitted to challenge on appeal the order denying his motion to withdraw his first pleas. Both the prosecutor and the trial court agreed. Appellant then entered no contest pleas to all remaining charges in all cases and, without any further inquiry by the trial court, the pleas were accepted and appellant was adjudicated guilty of all charges and sentenced to thirty years in prison, as an habitual felony offender, on each of the burglary of a dwelling charges; and to ten years in prison, as an habitual felony offender, on each of the grand theft charges. All sentences were to run concurrently with each other, and with the sentences in the first case. (Appellant was sentenced to time served on all of the misdemeanor criminal mischief charges.) This appeal follows.
Before accepting a plea of guilty or no contest, it is a trial court's responsibility to determine "that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness." Fla.R.Crim.P. 3.170(k). We have recently noted that "[s]uch a procedure is a matter of federal constitutional mandate." Watson v. State, 20 Fla. L. Weekly D 1913, 1914, ___ So.2d ___, ___ (Fla. 1st DCA Aug. 23, 1995). To assist trial courts in ensuring that the record reflects sufficient information to document the voluntariness of pleas of guilty or no contest, Florida Rule of Criminal Procedure 3.172(c) lists matters as to which inquiry should be made. Here, because the trial court failed to conduct any inquiry along the lines proposed in rule 3.172(c), appellant's claim that he had been confused and coerced and that, as a result, his plea had not been intelligently or voluntarily made stands unrefuted. Although the record does contain a written plea agreement addressing many of the matters listed in rule 3.172(c), that fact does not alter the posture of this case because appellant was not asked whether he understood the contents of the document or, for that matter, whether he *352 was able to read. E.g., Koenig v. State, 597 So.2d 256 (Fla. 1992).
Because the record does not refute appellant's claim that his pleas were neither intelligently nor voluntarily made, we are constrained to conclude that the trial court abused its discretion when it denied the motion for leave to withdraw those pleas. Watson v. State, 20 Fla. L. Weekly D 1913, ___ So.2d ___, ___ (Fla. 1st DCA Aug. 23, 1995). Accordingly, we reverse. Moreover, because it is clear that appellant would not have entered pleas to the charges in the remaining cases had the trial court not erroneously denied his request to be permitted to withdraw the pleas entered in the first case, on remand we direct that appellant be permitted to plead anew to all charges in all seven cases.
REVERSED and REMANDED, with directions.
BOOTH and MINER, JJ., concur.